UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

MIGUEL TIRADO,

                    Plaintiff,                        No. 13CV2848-LTS-AJP

          -against-

SERGEANT BRIAN SHUTT et al.,

                    Defendants.
--------------------------------------------------------x


MEMORANDUM OPINION AND ORDER
ADOPTING REPORT AND RECOMMENDATION IN PART

             On April 15, 2013, Plaintiff Miguel Tirado ("Plaintiff") filed the initial pro se

complaint in this action asserting claims against Defendants Sergeant Brian Shutt, Lieutenant

Stacy Dominic and Corrections Officers Steven Holliday ("Holliday"), Rodney Lassiter

("Lassiter") and Kyle Jackson (collectively, "Defendants") arising from a series of alleged

constitutional violations.  On January 24, 2014, the case was referred to Magistrate Judge Debra

C. Freeman for dispositive motion practice and, on August 6, 2014, it was reassigned to

Magistrate Judge Andrew J. Peck.  Plaintiff, now represented by counsel, filed an Amended

Complaint on August 27, 2014 (See Amended Complaint ("Am. Compl."), Docket Entry No.

80), and on December 29, 2014, Defendants moved for partial summary judgment.  (See

Defendants' Motion For Summary Judgment, Docket Entry No. 100.)

             On February 23, 2015, Judge Peck issued a Report and Recommendation

("Report") recommending, inter alia, that the Court grant Defendants' motion for partial

summary judgment dismissing three of Plaintiff's First Amendment retaliation claims, namely:

(1) that Plaintiff was assaulted in April 2012 in retaliation for filing a January 2012 grievance;

(2) that an unknown officer told him to "hold it down" in response to his attempt to report the

April 2012 assault; and (3) that he and his parents were intimidated and menaced in retaliation

for the filing of the instant lawsuit.[1]  (See Docket Entry No. 115.)  On March 9, 2015, Plaintiff

filed objections to the Report, specifically objecting to Judge Peck's recommendations

concerning his "hold it down" and parental intimidation claims, and urging the Court to adopt

the remainder of Judge Peck's analysis.  (See Plaintiff's Partial Objections to Report and

Recommendation ("Pl. Objections"), Docket Entry No. 123.)  The Court has carefully reviewed

the Report, the parties' submissions and the record relied upon by Judge Peck in his

determination of the summary judgment motion.  For the following reasons, Plaintiff's

objections are sustained in part and the Court adopts the Report in part.


BACKGROUND

The following facts are, unless characterized as claims or allegations, undisputed.[2]

Plaintiff Miguel Tirado is currently incarcerated by the New York State Department of

Corrections at Sing Sing Correctional Facility.  (Defendants' Local Civil Rule 56.1 Statement

---

[1]    Defendants have thus moved for summary judgment dismissing all of Plaintiff's
First Amendment retaliation claims with the exception of the claim that a March 16,
2014, misbehavior report was filed "to advance Defendants' conspiracy to destroy
[Plaintiff's] credibility and cover up Defendants' bad acts."  Defendants have not
moved for summary judgment on Plaintiff's Eighth Amendment excessive force
claim.

[2]    The undisputed facts are identified as such in the parties' statements pursuant to
S.D.N.Y. Local Civil Rule 56.1 or drawn from evidence as to which there is no non-
conclusory factual proffer.  Citations to the parties' respective Local Civil Rule 56.1
Statements (Pl. 56.1 St.; Defs. 56.1 St.) incorporate by reference the parties'
citations to underlying evidentiary submissions.

("Defs. 56.1 St."), Docket Entry No. 101, ¶ 1; Plaintiff's Local Civil Rule 56.1 Statement ("Pl. 56.1 St."), Docket Entry No. 105, ¶ 1.)  On January 13, 2012, Plaintiff's cell was searched by two Sing Sing corrections officers.  (Defs. 56.1 St. ¶ 7; Pl. 56.1 St. ¶ 7.)  During the course of the search, Plaintiff felt sick and laid down on the floor.  (Defs. 56.1 St. ¶ 7; Pl. 56.1 St. ¶ 7.)  Plaintiff claims that he was dragged from his cell and down two flights of stairs to the infirmary.  (Defs. 56.1 St. ¶ 7; Pl. 56.1 St. ¶ 7.)  In connection with this incident, Plaintiff filed an inmate grievance alleging staff misconduct and harassment.  (Defs. 56.1 St. ¶ 7; Pl. 56.1 St. ¶ 7.)  Plaintiff's grievance was denied by the Superintendent at Sing Sing.  (Defs. 56.1 St. ¶¶ 8-9; Pl. 56.1 St. ¶¶ 8-9.)  On appeal, the Central Officer Review Committee upheld the Superintendent's denial.  (Defs. 56.1 St. ¶¶ 8-9; Pl. 56.1 St. ¶¶ 8-9.)  In his Amended Complaint, Plaintiff alleges that Defendants were aware of his January 2012 grievance.  (Am. Compl. ¶ 15.)  Defendants, however, have denied any knowledge of the grievance.  (See generally Declaration of Neil Shevlin in Support of Motion for Summary Judgment ("Shevlin Decl."), Docket Entry No. 102, Attachments 1-5: Declarations of Brian Shutt ("Shutt Decl."), Kyle Jackson ("Jackson Decl."), Steven Holliday ("Holliday Decl."), Rodney Lassiter ("Lassiter Decl.") and Stacy Dominic ("Dominic Decl.").)[3]

Plaintiff further claims that, on April 19, 2012, Corrections Officers Holliday and Lassiter assaulted him when he requested to speak with a sergeant about being denied his recreation time.  (Plaintiff's Opposition to Motion for Summary Judgment ("Pl. Opp."), Docket Entry No. 104 ¶¶ 3-4; See generally Declaration of Paul Kremer ("Kremer Decl.", Docket Entry No. 106, Ex. C ("Tirado Dep.") at 40-47.)  Three fellow Sing Sing inmates, Anthony Cassidy,

---

[3]     The corrections officers and nurse who were the subject of Plaintiff's January 2012 grievance are not defendants in this suit.  (Pl. 56.1 St. ¶ 7; Def. 56.1 St. ¶ 7.)

Elias Otero and Kelvin Vazquez, all provided deposition testimony in which they claimed to have seen Officer Holliday approach Plaintiff's cell as he called out to speak with a sergeant.  (See Kremer Decl., Ex. E ("Cassidy Dep.") at pp. 4, 6, 17-18; Ex. I ("Vazquez Dep.") at pp. 6-7; Ex. J ("Otero Dep.") at pp. 15, 25.)  Inmates Anthony Cassidy and Kelvin Vazquez corroborate Plaintiff's claim that he requested to speak to a sergeant in connection with the denial of his recreation time.  (Cassidy Dep. at 6:3-9; Vazquez Dep. at 6:4-10.)  During this interaction, Officer Holliday allegedly had Plaintiff exit his cell and walk down to the center gate area of the gallery.  (Tirado Dep. at 40:17-22; Cassidy Dep. at 7:4-7:16; Vazquez Dep. at 6:4-7:6.)  Officer Holliday knew that the area near the center gate was not visible to any cameras or other inmates. (Kremer Decl., Ex. D ("Holliday Dep.") at 144:17-145:13.)  Inmates Vazquez and Cassidy testified that, without provocation, Officer Holliday pushed and struck Plaintiff after ordering him to the center gate area.  (Cassidy Dep. at 7:16-25, 20:2-21:24; Vazquez Dep. at 7:7-9, 12:3-25.) Plaintiff has alleged that Officer Holliday pinned him against a wall while Officer Lassiter repeatedly punched him in the face.  (Tirado Dep. at 40:7-41:1, 43:2-45:18, 87.)  Defendants concede that an altercation took place and that Officers Holliday and Lassiter used force against Plaintiff.  (Defs. 56.1 St. ¶ 12.)  They claim, however, that the use of force was in response to Plaintiff refusing to follow a direct order and striking Officer Holliday in the face.  (Holliday Decl. ¶ 4.)

Following the altercation, Plaintiff was taken to the infirmary (Defs. 56.1 St. ¶ 12; Pl. 56.1 St. ¶ 12), where he claims that he tried to explain the assault to Lieutenant Stacy Dominic.  (Am. Compl. ¶ 35; Tirado Dep. at 50:2-14.)  Plaintiff further alleges that, after Lieutenant Dominic left the medical facility, an unidentified corrections officer instructed him to "hold it down" in response to his attempt to explain his version of the assault.  (Am. Compl. ¶ 35;

Tirado Dep. at 51:7-22.)  Plaintiff contends that he understood "hold it down" to mean that he

should not tell anyone that he had been assaulted or why.  (Tirado Dep. at 55:1-56:22; Kremer

Decl., Ex. L: Benjamin Weiser and Michael Schwirtz, U.S. Inquiry Finds a 'Culture of Violence'

Against Teenage Inmates at Rikers Island, N.Y. TIMES, Aug. 4, 2014, http://nyti.ms/1zNzLO9)

(reporting that "hold it down" is a coded phrase used by corrections officers to pressure inmates

into not reporting beatings under threat of violence or disciplinary sanction).  Plaintiff has

admitted that none of the Defendants named in this suit were at the medical facility when the

alleged threat was made.  (See generally Tirado Dep. at 48:13-24, 51:7-20, 55:12-13, 56:6-13.)

  Plaintiff was sentenced to ninety days in the Special Housing Unit ("SHU") in

connection with the April 2012 altercation and resulting misbehavior reports.  (Defs. 56.1 St. ¶

18; Pl. 56.1 St. ¶ 18.)  Plaintiff was transferred from Sing Sing to Mid-State Correctional Facility

on May 4, 2012, to serve this time.  (Defs. 56.1 St. ¶ 24; Pl. 56.1 St. ¶ 24.)  After completing his

SHU sentence at Mid-State, Plaintiff  was transferred to Auburn Correctional Facility on August

1, 2012, and then back to Sing Sing on February 10, 2014.  (Defs. 56.1 St. ¶¶ 25-26; Pl. 56.1 St.

¶¶ 25-26.)

  On April 25, 2013, Plaintiff filed a pro se complaint outlining the facts of the

alleged April 19, 2012, assault by Officers Holliday and Lassiter.  (Complaint ("Compl."),

Docket Entry No. 2 ¶¶ 6-13.)  Plaintiff also alleged that Steven Slivinski, a corrections officer at

Auburn Correctional Facility, filed an inmate misbehavior report against him to retaliate for filing

the April 2013 complaint.  (Am. Compl. ¶ 69-70; Tirado Depo. at 64-65.)  At a deposition taken

following the filing of this suit, and in his Amended Complaint, Plaintiff claimed that on March

16, 2014, Officer Holliday harassed him by "talking to [him] about this case and why [he is]

doing it" (Tirado Dep. at 110:2-13) and "menacing him in the hospital waiting room."  (Am.

Compl. ¶ 76.)  Officer Holliday filed a misbehavior report against Plaintiff on or around March

17, 2014, allegedly stemming from the March 16, 2014, incident, in which he claimed that

Plaintiff had engaged in harassing and violent conduct in the emergency room.  (Kremer Decl.,

Ex. V.)  Plaintiff was subsequently found guilty of all charges filed against him.  (Id.)

        Plaintiff has further alleged that, during a visit with his parents on March 23, 2014,

Officer Holliday intimidated and menaced them by pacing behind his father while glaring as they

conversed in the visiting room.  (Am. Compl. ¶ 81; Tirado Dep. at 91:3-20.)  On August 2, 2014,

Officer Holliday filed another misbehavior report against Plaintiff, claiming that he made threats,

harassed a corrections officer and violated visiting procedures.  (Kremer Decl., Ex. W.)  Plaintiff

was found guilty only of the visiting violation, and the hearing disposition officer found that

Officer Holliday's testimony "failed to corroborate" the other charges.  (Id.)[4]  Plaintiff has not,

however, filed a grievance in connection with the August 2014 misbehavior report.  (Declaration

of Quandera Quick ¶ 3 (attached to Supplemental Declaration of Neil Shevlin), Docket Entry No.

113.)

## DISCUSSION

### Standard of Review

        When reviewing a magistrate judge's report and recommendation, the Court "may

accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate."  28 U.S.C.S. § 636(b)(1)(C) (LexisNexis 2012).  In reviewing those portions of a

report to which no timely objection has been made, "a district court need only satisfy itself that

---

[4]     Officer Holliday has since admitted that he issued the August 2, 2014, misbehavior
report "to protect [his] interests, [his] job."  (Id.)

there is no clear error on the face of the record." Carlson v. Dep't of Justice, No. 10CV5149-

PAE-KNF, 2012 WL 928124, at *1 (S.D.N.Y. Mar. 19, 2012) (internal citation omitted).

Furthermore, objections that "simply reiterate original arguments" need only be subjected to clear

error review.  See e.g., Pineda v. Masonry Const. Inc., 831 F. Supp. 2d 666, 671 (S.D.N.Y. 2011).

However, where specific objections are made, the Court must make a de novo determination as to

those aspects of the report.  United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997).  In

making its de novo determination of a matter specifically objected to, a district judge "has

discretion in the weight placed on proposed findings and recommendations and may afford a

degree of deference to the Report and Recommendation." Vaccariello v. XM Satelite Radio Inc.,

295 F.R.D. 62, 67 (S.D.N.Y. 2013).

    A movant is entitled to summary judgment where "there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a).  Thus, to succeed at the summary judgment stage, the movant must demonstrate "the

absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23

(1986).  "The plain language of Rule 56[] mandates the entry of summary judgment . . . against a

party who fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial." Id.  If such a

showing is disputed, the court must determine "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

    The Court reviews de novo Judge Peck's recommendations that Plaintiff's First

Amendment retaliation claims that he was told to "hold it down" by an unknown officer in

response to his attempt to report the April 2012 assault, and that he and his parents were intimidated and menaced in response to the filing of the instant lawsuit, should be dismissed.[5]

Plaintiff's First Amendment Retaliation Claims

*Legal Standards*

To make out a First Amendment retaliation claim, a plaintiff must establish: (1) that the speech or conduct in which he engaged was constitutionally protected; (2) that the defendant took adverse action against him; (3) and that there was a causal connection between the adverse action and the protected speech or conduct.  See Holland v. Goord, 758 F.3d 215, 225 (2d Cir. 2014).  The First Amendment's freedom of speech protection extends to complaints filed by inmates against prison officials.  Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996) (finding an inmate's filing of a grievance to be constitutionally protected and retaliation against a prisoner for pursuing such a grievance a violation of a right guaranteed by the First Amendment); Ayers v. Roberts, No. 05CV0889A, 2008 WL 2079921, at *6 (W.D.N.Y. May 15, 2008) ("The filing of formal prisoner grievances is among the conduct protected by the First Amendment and thus actionable under § 1983.").  Inmates are similarly protected when they file lawsuits against prison officials.  See, e.g., Espinal v. Goord, 558 F.3d 119, 128-29 (2d Cir. 2009) (finding that defendant's federal lawsuit was a protected activity).  In some circumstances this protection extends beyond the filing of formal grievances to oral complaints made to corrections officers. Smith v. Woods, No. 03CV0480, 2006 WL 1133247, at *10 (N.D.N.Y. Apr. 24, 2006) (extending First Amendment protection to prisoner's oral complaints to correction officers), aff'd, 219 F.

---

[5]      Plaintiff has raised no specific objection with respect to Judge Peck's recommendation that his claim that the April 2012 assault was carried out in retaliation for his grievance filed against corrections officers on January 18, 2012, should be dismissed and, as indicated above, urges this Court to adopt the remainder of Judge Peck's Report and Recommendation.  (See Pl. Objections at p. 2.)

App'x 110 (2d Cir. 2007). Defendants do not dispute that Plaintiff's April 2012 request to speak with a sergeant, and the filing of this suit, are constitutionally protected actions. (See generally Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Defs. Reply Br."), Docket Entry No. 112, at p. 4.)

To establish an adverse action under the First Amendment retaliation analysis, a plaintiff must demonstrate that a person of ordinary firmness would have been deterred from the exercise of his constitutional rights by the action taken against him. Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003). Such actions must be more than trivial to meet the 'ordinary firmness' threshold; otherwise they are regarded as de minimis and fail to meet the adverse action prong of the First Amendment retaliation analysis. Id.

Courts will consider a number of factors in determining whether a causal connection exists between the plaintiff's protected activity and an adverse action, such as: (1) the outcome of any hearing concerning the allegedly retaliatory charges; (2) the inmate's prior disciplinary record; (3) any statements made by the defendant concerning his motivation; and (4) the temporal proximity between the protected activity and the defendant's adverse action. See Williams v. Muller, No. 98CV5204-BSJ, 2001 WL 936297, at *3 (S.D.N.Y. Aug. 17, 2001); see also Colon v. Coughlin, 58 F.3d 865, 872-73 (2d Cir. 1995).

*Plaintiff's "Hold it Down" Claim*

In his Report, Judge Peck concludes that the "hold it down" threat made against Plaintiff by an unknown corrections officer was too vague to constitute an adverse action because the statement lacked enough specificity to deter Plaintiff from reporting the alleged assault. (Report at p. 22.) In his Objections, Plaintiff cites a newspaper report as corroboration for the proposition that it is well known that "hold it down" is a coded phrase used by corrections

officers to instruct inmates not to report beatings and conveys a threat of physical violence or

disciplinary sanction.  (Pl. Objections at p. 4.)  Furthermore, Plaintiff argues that he has raised a

disputed issue of material fact with respect to the causal connection between the reporting of the

alleged assault and the "hold it down" threat.  (Pl. Objections at p. 5.)

        Courts generally approach First Amendment retaliation claims brought by inmates

"with skepticism and particular care."  <u>Davis</u>, 320 F.3d at 352.  Though certain verbal threats may

rise to the level of adverse actions, such threats are generally either quite specific or made on a

repeated basis.  <u>Hepworth v. Suffolk County</u>, No. 02CV6473-ENV-ETB, 2006 WL 2844408, at

*8-9 (E.D.N.Y. Sept. 29, 2006) (holding that "a reasonable jury could find that [correction

officers] unconstitutionally retaliated against [inmate] ... for exercising his First Amendment"

rights where there were "continued verbal threats" that the inmate would be subjected to "another

beating or be killed.").

        Plaintiff has tendered insufficient admissible evidence to raise a genuine issue as

to whether the alleged "hold it down" comment was anything more than a vague and unspecific

threat that was <u>de</u> <u>minimis</u> in nature.  Hostile statements of prison guards, though made in

connection with an inmate's exercise of free speech, do not presumptively violate the First

Amendment.  <u>Davis</u>, 320 F.3d at 353 (noting that a prisoner may be required to tolerate more than

an average citizen before a retaliatory action taken against him is considered adverse); <u>See</u> <u>e.g.</u>,

<u>Bartley v. Collins</u>, No. 95CV10161-RJH, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006)

(noting that "verbal threats such as 'we going to get you, you better drop the suit,' do not rise to

the level of adverse action.").  The Court therefore agrees with Judge Peck's determination that an

unknown officer's "hold it down" statement to Plaintiff does not rise above the level of a <u>de</u>

<u>minimis</u> action.

Furthermore, Plaintiff has failed to raise a genuine issue of material fact as to whether any defendant named in this suit caused the "hold it down" threat to be made.  In order to support his First Amendment retaliation claim, Plaintiff must proffer facts sufficient to support a finding of Defendants' involvement in the alleged retaliation.  Rosales v. Fischer, No. 07CV10554 -LAP, 2011 WL 253392, at *10 (S.D.N.Y. Jan. 24, 2011) (granting summary judgment where plaintiff failed to point to any evidence to counter named defendant's denial of his alleged role in a retaliatory action).  Although Plaintiff argues that an issue of material fact exists as to whether Defendants caused the unknown officer to instruct him to "hold it down," he has made no evidentiary proffer placing any of the Defendants in the medical facility at the time the statement was made, nor has he proffered any evidence from which a non-speculative conclusion could be drawn that Defendants colluded with the unknown officer or induced him to make the alleged threat.  Plaintiff has thus failed to raise a genuine issue of material fact with respect to the personal involvement of any of the Defendants in the unknown officer's "hold it down" threat, and thus cannot satisfy the causation element of the relevant analysis.

The Court has reviewed de novo the Report's recommendation that the retaliation claim based on the "hold it down" statement made by the unknown officer should be dismissed for lack of any genuine issue of material fact.  Because there is no evidence connecting the statement to any of the named Defendants, the Court concurs in Judge Peck's conclusion that Defendants are entitled to summary judgment dismissing this claim.

*Plaintiff's Intimidation Claim*

The Report further recommends dismissal of Plaintiff's claim that Officer Holliday intimidated and menaced him and his parents during their March 23, 2014, visit.  (Report at p. 14.)  In the Report, Judge Peck treats the alleged visiting room incident as a stand-alone claim and

concludes that Officer Holliday's alleged pacing behind Plaintiff's parents was too vague a threat to constitute an adverse action. (Report at p. 24.) In his objections, Plaintiff contends that Officer Holliday's conduct was calculated to intimidate Plaintiff from exercising his right of access to the court and, therefore, a reasonable jury could find that it rose to the level of an adverse action. (Pl. Objections at p. 6.) Plaintiff also contends that Officer Holliday's conduct, even if not an adverse action standing alone, should be considered within the context of an alleged campaign of harassment perpetrated against him, beginning with the April 2012 assault and concluding with Officer Holliday's August 2014 misbehavior report. (Pl. Objections at p. 5.) Plaintiff argues that the temporal proximity between "a hearing period" associated with the instant suit, in which Plaintiff testified that Officer Holliday had harassed him, and the pacing incident establishes that Officer Holliday's pacing "was part of this retaliation campaign." (Pl. Objections at p. 6.)

Although the incident is, standing alone, insufficient to constitute an adverse action, a claim of retaliation may be made out based on a series of actions motivated by retaliation that are, collectively, sufficient to deter a person of ordinary firmness from exercising his First Amendment rights. See Thaddeus-X v. Blatter, 175 F.3d 378, 398-99 (6th Cir. 1999) (remanding for determination as to whether alleged harassment and cold meals would have sufficient deterrent effect, and noting that harassment, physical threats, and relocation "would likely have a strong deterrent effect"); see also Dabney v. Maddock, No. 10CV0519-GTS-DEP, 2011 WL 7479164, at *4 (N.D.N.Y. Nov. 29, 2011), report and recommendation adopted, No. 10CV0519-GTS-DEP, 2012 WL 760748 (N.D.N.Y. Mar. 7, 2012) (noting finding that, even if none of plaintiff's allegations rise "to a level sufficient to support a finding of adverse action, collectively they could suffice to constitute adverse action.").

Plaintiff has raised genuine issues of fact concerning other allegedly retaliatory conduct by Officer Holliday, specifically the April 19, 2012, beating, false charges, and alleged planting of contraband in Plaintiff's cell.  The alleged pacing and glaring in the visiting room took place shortly after the allegedly retaliatory March 16, 2014, misbehavior report was made, and followed the filing of this lawsuit.  Under these circumstances, it is not properly viewed only as an isolated incident, and the jury may consider whether, if the Plaintiff proves that the incident occurred, it was part of a pattern of retaliatory conduct that, collectively, rose to the level of adverse action.

Plaintiff's objection to this aspect of the Report is sustained.

CONCLUSION

For the foregoing reasons, Plaintiff's objections to Judge Peck's Report are sustained in part.  The Report is adopted with the exception of section III.C.3 thereof.  Accordingly, Plaintiff's claims against Defendants Dominic and Jackson are DISMISSED in their entirety; Defendants' motion for partial summary judgment is DENIED with respect to (1) Tirado's claim that the remaining Defendants retaliated against him on April 19, 2012, for requesting to speak to a sergeant by assaulting him and issuing a false misbehavior report based on the assault, (2) his claim that the remaining Defendants planted contraband in his cell as a further act of retaliation, and (3) his claim that Defendant Holliday intimidated him and his parents on March 23, 2014, as part of a pattern of retaliatory actions.  The motion is GRANTED in all other respects.

The three claims enumerated in the foregoing paragraph remain for trial, along with the following claims: (4) Plaintiff's claim that a March 16, 2014, misbehavior report was

retaliatory, and (5) Plaintiff's claim that Defendants used and/or failed to intervene in the use of excessive force against Plaintiff on April 19, 2012, in violation of Plaintiff's Eighth Amendment rights.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith.  Accordingly, any application to proceed on appeal in forma pauperis with respect to the claims addressed in the Report and this Order is denied.  See Coppedge v. United States, 369 U.S. 438, 444 (1962).

The final pre-trial conference in this action is rescheduled to **September 18, 2015, at 11:45 a.m.** and the related deadlines are modified accordingly.

SO ORDERED.

Dated: New York, New York
          July 22, 2015

                                                       /s/  Laura Taylor Swain
                                                    LAURA TAYLOR SWAIN
                                                    United States District Judge