UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

MIGUEL TIRADO,

                    Plaintiff,                        No. 13CV2848-LTS-AJP

        -against-

SERGEANT BRIAN SHUTT et al.,

                    Defendants.
--------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

        Presently before the Court are the motions in limine of Plaintiff Miguel Tirado

("Plaintiff" or "Tirado") and Defendants Sergeant Brian Shutt and Correction Officers Steven

Holliday and Rodney Lassiter (collectively, "Defendants"), as well as Plaintiff's motion for

preclusive sanctions pursuant to Federal Rule of Civil Procedure 37.  The Court has carefully

considered all of the parties' submissions.  For the reasons stated below, the motions are

granted in part and denied in part.

BACKGROUND

        In light of the prior motion practice in this case, the Court provides only a brief

summary of the relevant procedural background.[1]

        On April 15, 2013, Plaintiff Miguel Tirado ("Plaintiff") filed the initial pro se

complaint in this action asserting claims against Defendants Sergeant Brian Shutt, Lieutenant

---

[1]      For a full discussion of the factual background of this case,  see Memorandum
Opinion and Order Adopting Report and Recommendation in Part (Docket Entry
No. 153).

Stacy Dominic and Corrections Officers Steven Holliday ("Holliday"), Rodney Lassiter

("Lassiter") and Kyle Jackson, arising from a series of alleged constitutional violations.  On

January 24, 2014, the case was referred to Magistrate Judge Debra C. Freeman for dispositive

motion practice and, on August 6, 2014, it was reassigned to Magistrate Judge Andrew J. Peck.

Plaintiff, now represented by counsel, filed an Amended Complaint on August 27, 2014 (see

Amended Complaint ("Am. Compl."), Docket Entry No. 80), and on December 29, 2014,

Defendants moved for partial summary judgment.  (See Defendants' Motion For Summary

Judgment, Docket Entry No. 100.)

On February 23, 2015, Judge Peck issued a Report and Recommendation

("Report") recommending, inter alia, that the Court grant Defendants' motion for partial

summary judgment dismissing three of Plaintiff's First Amendment retaliation claims.  (See

Docket Entry No. 115.)  After considering Plaintiff's objections to the Report and Defendants'

opposition to those objections, the Court issued a Memorandum Opinion and Order adopting

Judge Peck's Report in part, dismissing the case as against Defendants Kyle Jackson and Stacy

Dominic, and leaving five of Plaintiff's constitutional claims for resolution at trial.  (See Docket

Entry No. 153 at pp. 13-14.)  The instant motions were filed prior to this Court's partial

adoption of the Report.

<u>DISCUSSION</u>

Legal Standards

"The purpose of in limine motions is to enable the Court to rule on disputes over

the admissibility of discrete items of evidence."  See TVT Records v. Island Def Jam Music

Group, 250 F. Supp. 2d 341, 344 (S.D.N.Y. 2003).  See also Fed. R. Evid. 104 ("The court must

decide any preliminary question about whether a witness is qualified, a privilege exists, or

evidence is admissible.").  Such rulings "aid the trial process by enabling the Court to rule in

advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set

for trial, without lengthy argument at, or interruption of, the trial."  Palmieri v. Defaria, 88 F.3d

136, 141 (2d Cir. 1996) (internal quotation marks and citation omitted).  In deciding motions in

limine, courts often engage in the balancing test set out in Federal Rule of Evidence 403 ("Rule

403"), which provides that courts must exclude relevant evidence[2] when the probative value of

the evidence is substantially outweighed by any potential for "unfair prejudice, confusing the

issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

evidence."  Fed. R. Evid. 403.

      Federal Rule of Civil Procedure 26(a) ("Rule 26") requires parties to provide

during discovery "a copy – or a description by category and location – of all documents,

electronically stored information, and tangible things that the disclosing party has in its

possession, custody, or control and may use to support its claims or defenses."  Fed R. Civ. P.

26(a)(1)(A)(ii).  Rule 26 further provides that parties must disclose "the name and, if known, the

address and telephone number of each individual likely to have discoverable information – along

with the subjects of that information – that the disclosing party may use to support its claims or

defenses, unless the use would be solely for impeachment."  Fed. R. Civ. P. 26(a)(1)(A)(i).

When a party does not timely make such disclosures, Federal Rule of Civil Procedure 37 ("Rule

37") provides a remedy in the form of a preclusionary sanction which must be imposed "unless

---

[2]    Federal Rule of Evidence 401 provides that evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed R. Evid. 401.

the failure [to disclose] was substantially justified or harmless." See Fed. R. Civ. P. 37(c).  See also Design Strategies, Inc. v. Davis, 228 F.R.D. 210, 212 (S.D.N.Y. 2005) ("Rule 37(c)(1)'s preclusionary sanction is automatic absent a determination of either substantial justification or harmlessness") (internal quotation marks and citation omitted).  "The burden to prove substantial justification or harmlessness rests with the dilatory party." Schiller v. City of New York, Nos. 04CV7922-RJS-JCF, 04CV7921-RJS-JCF, 2008 WL 4525341, at *3 (S.D.N.Y. Oct. 9, 2008).  In determining whether to exclude untimely disclosed evidence or witnesses, the court may consider four discretionary factors: "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." Quiles v. City of New York, No. 11CV5613-FM, 2014 WL 1918635, at *3 (S.D.N.Y. May 8, 2014) (quoting Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006)).

Defendants' Motions[3]

> *Defendants' First Motion – Admission of Opinion Evidence Related to the April 19, 2012, Incident and Evidence of Notices of Discipline Issued to Defendants Holliday and Lassiter*

Defendants have moved to exclude what they characterize as opinion evidence of Deputy Superintendent William Keyser (the hearing officer at a disciplinary hearing stemming from a misbehavior report issued by Defendant Holliday against Plaintiff following the April 19, 2012, incident) and Inspector Frank Bigit (who investigated Plaintiff's claim that Defendants

---

[3]     For ease of reference, the Court has denominated each subject of the parties' omnibus in limine motions sequentially, viz, Defendants' First Motion, Defendants' Second Motion, Plaintiff's First Motion, and so on.

Holliday and Lassiter used improper force against him during the April 19, 2012, incident).  It is

undisputed that neither of these individuals witnessed the April 19, 2012, incident.  Rather, they

made findings and took actions after investigations.  Defendants also seek to exclude any

evidence of the notices of discipline that were issued against Defendants Holliday and Lassiter

following the April 19, 2012, incident, as the notices were later withdrawn and Defendants

Holliday and Lassiter were never disciplined.

        Plaintiff argues that the evidence of the witnesses' conclusions and the notices of

discipline is probative of "Defendants' motivation to retaliate against Mr. Tirado – both on April

19, 2012 and on subsequent dates."  (See Plaintiff's Memorandum of Law in Opposition to

Defendants' Motions In Limine ("Plaintiff Opp. Memo"), Docket Entry No. 144 at p. 3.)  Plaintiff

asserts that "[i]t is important for the jury to consider that Defendants knew [that they were being

investigated] and that their jobs were on the line as a result of the April 19, 2012 altercation and

subsequent statements made about it," as such knowledge could form the basis of Defendants'

motive to "[take] certain adverse actions (issu[ing] such false misbehavior reports) against Mr.

Tirado."  (See Plaintiff Opp. Memo at p. 5.)  Although Plaintiff refers to "Defendants" in

advancing the argument summarized here, the only incidents he identifies as purportedly

motivated by concern over the notices of discipline are ones involving Holliday.  Accordingly,

the Court considers the contested evidentiary proffers only insofar as Plaintiff argues that they are

relevant to the question of whether Holliday issued false misbehavior reports on April 19, 2012,

March 16, 2014, and August 2, 2014, in retaliation for protected activity by Tirado.

        Plaintiff's claim that findings of false testimony, or notices of discipline, issued

after hearings and investigations concerning the April 19, 2012, misbehavior report could

establish a retaliatory motive for the April 2012 report itself is plainly nonsensical.  Accordingly,

the Court focuses on the potential relevance of the challenged information to Plaintiff's claim that the March and August 2014 misbehavior reports were retaliatory.  Although the inference that the by-then-withdrawn notice of discipline could have angered Holliday sufficiently to be a motivating factor in the issuance of the later reports is weak, the traceability of the threat of termination to the rejection of Holliday's accusations against Tirado is relevant, within the meaning of Rule 402, to the question of retaliatory motive.  As Plaintiff points out, Holliday acknowledged in his deposition that officers are rarely disciplined for misconduct involving inmates; a rational jury could find that the series of events made a sufficient impression on Holliday to motivate him to take revenge on Tirado even though Holliday's job was no longer threatened at the time.  The Court will therefore admit documentation of the dismissal of the April 2012 misbehavior report (Declaration of Paul J. Kremer in Opposition to Defendants' Motions in Limine, Docket Entry No. 145, Ex. K), the notice of discipline that was issued to Holliday in August 2012 (id., Ex. C), and the October 2013 letter informing Holliday of the withdrawal of the notice of discipline.  (Id., Ex. N.)  The Bigit and Keyser reports and email communications will be excluded, as will any testimony elaborating on the reasons for the determinations and notices.  Such other documentary and testimonial evidence of reasoning or conclusions by Keyser and Bigit as to the facts of the incident or the credibility of the testimony of the witnesses will not be admitted, as such testimony has minimal probative value because it is not based on personal knowledge of the facts of the incident and has substantial potential for unfairly prejudicing the jury's evaluation of the credibility of the Defendants and their witnesses.

Upon request, the Court will instruct the jury to the effect that the evidence of the issuance of the notice of discipline and later withdrawal of the notice of discipline is admitted solely in connection with the jury's consideration of Plaintiff's claim that Holliday's issuance of

misbehavior reports in March and August 2014 were retaliatory actions arising from the dismissal of the April 2012 misbehavior report and the issuance of the August 2012 notice of discipline, rather than for the truth of the factual statements in the documents concerning the April 2012 incident and the proceedings that followed. The jury may further be instructed that they are not to speculate on the reasons for the issuance or the withdrawal of the notice of discipline.

Defendants' First Motion in limine is thus granted in part.

*Defendants' Section Motion – Preclusion of Argument that the August 2, 2014, Misbehavior Report Supports a Retaliation Claim*

Defendants seek to prevent Plaintiff from arguing to the jury that the August 2, 2014, misbehavior report filed by Defendant Holliday against Plaintiff is demonstrative of a pattern of retaliation by Holliday. Defendants argue that, because Plaintiff's retaliation claim based on the August 2, 2014, report itself is precluded on exhaustion grounds, admission of argument centering on this report would be impermissibly confusing in violation of Rule 403.[4] Defendants also argue that presentation of this argument would constitute an attempt to offer improper propensity evidence in violation of Fed. R. Evid. 404. (See Memorandum of Law in Support of Defendant's Motions in Limine ("Def. Memo"), Docket Entry No. 128 at p. 8.)

In response, Plaintiff argues that evidence of Holliday's act of filing the August 2, 2014, misbehavior report is admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" on other occasions, pursuant to Federal Rule of Evidence 404(b)(2). (See Plaintiff Opp. Memo at p. 9.) Plaintiff posits that evidence of his August 2, 2014, interaction with Defendant Holliday, including Holliday's filing of the misbehavior report, is relevant to a determination of whether Holliday acted with an

---

[4]    In his Report, Judge Peck determined that the August 2014 report could not form the basis of a retaliation claim because Plaintiff had failed to exhaust his administrative remedies with respect to any such claim. (See Report at p. 27.)

improper retaliatory motive "on April 19, 2012 and afterwards."  (Plaintiff Opp. Memo at p. 9.)

Furthermore, Plaintiff points to Judge Peck's statement in his Report that Holliday's motive for

the August 2, 2014, misbehavior report could be considered "circumstantial evidence of a

retaliatory motive" for the April 19, 2012, use of force incident.  (See Report at p. 27.)[5]

   Judge Peck properly concluded that – despite the fact that it does serve as the basis

for a stand-alone retaliation claim itself – the August 2, 2014, report may be considered

circumstantial evidence of Holliday's retaliatory motive at other points in this case.  Defendants'

failure to object to this finding forecloses any further argument on the issue.  Furthermore, in this

Court's Memorandum Opinion and Order adopting Judge Peck's Report, the Court accepted as

plausible Plaintiff's argument that the August 2, 2014, misbehavior report could be considered

part of a "campaign of harassment" perpetrated by Defendant Holliday against Plaintiff.  (See

Memorandum Opinion and Order, Docket Entry No. 153 at p. 12.)  Defendants' Second Motion

in limine is therefore denied.

    *Defendants' Third Motion – Cross Examination of Inmate Witnesses on Criminal*
    *Convictions*

   Defendants next move in limine for permission to cross-examine four of Plaintiff's

inmate-witnesses about their criminal convictions.[6]  Defendants rely on Federal Rule of Evidence

609, which allows a party to attack "a witness's character for truthfulness by [submitting]

evidence of a criminal conviction," as long as the conviction occurred within the last ten years

and presentation of the conviction survives Rule 403 balancing.  See Fed. R. Evid. 609.

Defendants argue that determination of the credibility of the Inmate Witnesses is highly important

---

[5]   Defendants did not object to that element of Judge Peck's Report.

[6]   These witnesses are Anthony Cassidy, Elias Otero, Kelvin Vazquez, and Steven
   Kennedy (collectively, the "Inmate Witnesses").

to the jury, because these witnesses' characterizations of the April 19, 2012, incident differ markedly from the characterizations offered by the Defendants.  (See Def. Memo at p. 10.)  Defendants further argue that each of these witnesses has been convicted of an offense that bears heavily on the witness' character for honesty, rendering discussion of the prior convictions highly probative for Rule 403 purposes.  (See id. at pp. 10-11, "[h]ere, the criminal convictions of plaintiff's witnesses are: Anthony Cassidy (Attempted Burglary, 2nd), Elias Otero (Murder 2nd), Kelvin Vazquez (Robbery 2nd and Robbery 3rd), and Steven Kennedy (Criminal Sale of Controlled Substance 5th and Attempted Assault 1st).)  Defendants note that, because the Inmate Witnesses are not defendants in the case, Rule 609(a)(1)(A) provides that evidence of their prior convictions is presumptively admissible "subject to Rule 403" balancing.  In such a situation, a court will frequently exercise its discretion in considering "(1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness."  Daniels v. Loizzo, 986 F. Supp. 245, 250 (S.D.N.Y. 1997).

In response, Plaintiff essentially argues that the minimal probative value of the Inmate Witnesses' prior convictions is substantially outweighed by the potential for both unfair prejudice and confusion of issues.  Plaintiff asserts that, should the Court allow Defendants to cross-examine the Inmate Witnesses about their prior convictions, the examination should be limited to eliciting the fact and date of the Inmate Witnesses' respective convictions.  (See Plaintiff Opp. Memo at pp. 12-13.)

The Court agrees with Defendants that the prior convictions of the Inmate Witnesses have some probative value with respect to their character for truthfulness.  This value, however, is minimal, and any extended exploration of the nature and circumstances of the

witnesses' prior criminal conduct presents significant potential for unfair prejudice to the Plaintiff and confusion of the jury.  Therefore, the Court grants Defendants' motion in limine only to the extent that Defendants will be permitted to elicit on cross-examination the fact and date of the Inmate Witnesses' convictions.  No further testimony regarding these convictions will be permitted, and no extrinsic evidence will be admitted, unless an Inmate Witness denies the fact of his conviction.[7]

> *Defendants' Fourth Motion – Cross Examination of Plaintiff Regarding Portions of His Inmate Disciplinary History*

Defendants seek permission to cross-examine Plaintiff regarding portions of his inmate disciplinary history.  Specifically, they seek to cross-examine Plaintiff on disciplinary infractions for smuggling, unauthorized exchange and vandalism/stealing, as Defendants claim that these violations all involve "deception or a lack of truthfulness" and thus are appropriate topics of inquiry under Fed R. Evid. 608(b) and probative of Plaintiff's credibility.[8]  In response, Plaintiff argues that Defendants have not provided any evidence of how these disciplinary infractions are probative of his character for truthfulness, and further claims that cross-examination on these topics would confuse the jury, as several of Plaintiff's claims are based upon several allegedly false misbehavior reports filed against him.

The Court finds that any probative value of such cross-examination is substantially outweighed by the risk of unfair prejudice.  The parties have indicated to the Court that they have

---

[7]    In light of this determination, Plaintiff's motion in limine seeking to exclude evidence of the Inmate Witnesses' criminal convictions is denied.  (See Plaintiff Memo at pp. 6-9.)

[8]    Federal Rule of Evidence 608 permits specific instances of conduct "to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness."

agreed to a stipulation regarding discussion of Plaintiff's criminal history, pursuant to which the jury will be informed that Plaintiff was convicted of a felony for which he received a sentence of more than one year.  (See Plaintiff Opp. Memo at p. 13.)  Furthermore, the jury will already be well aware that Plaintiff is a prisoner in a maximum security facility.  In light of this, any inquiry into Plaintiff's disciplinary history would be of minimal additional probative value as to Plaintiff's credibility and would present the potential for unfair prejudice to the Plaintiff on the merits of his claims that he was improperly targeted for discipline.  Accordingly, the evidence of disciplinary infractions is inadmissible, under Rule 403, for general impeachment purposes and Defendants' Fourth Motion in limine on this point is denied.[9]

> *Defendants' Fifth Motion – Presentation of April 19, 2012, as First Amendment Retaliation Claim*

Defendants move to prevent Plaintiff from framing the April 19, 2012, use of force incident as a First Amendment retaliation claim, arguing that it was not pleaded as such and that it therefore should be presented to the jury only as an Eighth Amendment excessive use of force claim.  (See Def. Memo at pp. 13-14.)  Defendants argue that "plaintiff's new 'retaliation' theory is really just a rephrasing of the original claim, with the alleged motive by Holliday and Lassiter . . . now phrased as 'retaliation' and the use of force being the 'adverse action.'" (Def. Memo at p. 14.)  In response, Plaintiff notes that Judge Peck found in his Report that Plaintiff's Amended Complaint sufficiently pleaded a First Amendment retaliation claim with respect to the April 19, 2012, incident.  (See Report at 25-26; Plaintiff Opp. Memo at pp. 15-16.)  Defendants did not object to this aspect of the Report, which has been adopted.

---

[9]     For substantially the same reasons, the Court grants Plaintiff's motion seeking exclusion of any evidence related to the Inmate Witnesses' prison disciplinary histories.

Plaintiff will be permitted to present both First and Eighth Amendment claims based on the April 19, 2012, incident, and Defendants' Fifth Motion in limine is thus denied.

> *Defendants' Sixth Motion – Preclusion of Argument that Defendants "Conspired" With Each Other*

Finally, Defendants move the Court to prohibit Plaintiff from arguing that the Defendants "conspired" with each other in this matter.  Defendants note that all conspiracy claims have been excluded from this case in light of the intracorporate conspiracy doctrine.  (See Docket Entry No. 76.)[10]  In response, Plaintiff confirms that he does not intend to make a legal claim for conspiracy, but argues that he should be entitled to express his belief as a lay person that Defendants conspired together to deprive him of his civil rights.  (See Plaintiff Opp. Memo at p. 18.)

If Plaintiff can proffer a non-speculative factual foundation for his perception that Defendants acted in concert, Plaintiff's use of the term "conspiracy" in his testimony, to describe a perceived agreement to take joint action to violate Plaintiff's civil rights, is neither inappropriate nor unduly inflammatory.  Plaintiff's counsel may not, however, use the conspiracy nomenclature in arguments to the jury.  Furthermore, the Court's instructions to the jury will make it clear that no cause of action based on a conspiracy theory is being put forward and that its determinations with respect to the claims against each individual defendant must rest on the evidence regarding the defendant's own conduct.  Accordingly, Defendants' Sixth Motion in limine is denied to the extent Defendants seek to bar Plaintiff himself from using the term

---

[10]  See e.g., Anemone v. Metropolitan Transp. Authority, 419 F. Supp. 2d 602, 604 (S.D.N.Y. 2006) (holding that the intracorporate conspiracy doctrine provides that the "two or more actors requirement [of a conspiracy] cannot be satisfied where all of the alleged conspirators are employees of a single entity and acting within the scope of their employment as agents of that entity.").

"conspiracy" in testifying, provided that a proper foundation is laid, and is granted as to argument by counsel.

Plaintiff's Motions

> *Plaintiff's First Motion – Exclusion of Untimely Produced Photographs of Plaintiff and Sing Sing*

Plaintiff moves to exclude two of Defendants' proposed trial exhibits: Defendants' Exhibit AA, which is a set of photographs of Plaintiff Tirado, and Defendants' Exhibit M, which is a set of yet-to-be taken photographs of various locations at Sing Sing.  (See Plaintiff's Memorandum of Law in Support of His Motions in Limine ("Plaintiff Memo"), Docket Entry No. 130 at pp. 1-6; see also Docket Entry No. 125-4, Defendants' Exhibit List, Exhibit D to Joint Pretrial Order.)  Plaintiff moves to exclude these photographs on two separate bases.

First, Plaintiff argues that Defendants failed to disclose these photographs as required by Rule 26(a)(1), warranting their exclusion under Rule 37.  (See Plaintiff Memo at p. 2.)  Plaintiff claims that the photographs of him were not disclosed until five months after the close of fact discovery, and that the proposed photographs of Sing Sing have not yet been taken. Plaintiff also claims that the probative value of the photographs is substantially outweighed by the prospect of unfair prejudice, such that the photographs should be excluded under Rule 403.  With respect to the photographs of himself, Plaintiff argues that they are essentially mug shots taken of him while in prison and thus reinforce to the jury that he has been in prison for a long time, a fact that he asserts is unfairly prejudicial.  (See Plaintiff Memo at pp. 5-6.)  With respect to the photographs of locations at Sing Sing, Plaintiff argues that they would be cumulative, as both sides have already offered diagrams depicting relevant locations at Sing Sing on their respective exhibit lists, as well as unfairly prejudicial, as they will unfairly illustrate that prison is a

dangerous place for correction officers.  Furthermore, Plaintiff notes that he is no longer housed at Sing Sing, and therefore would be unable to contest the accuracy of Defendants' photographs of the facility or obtain alternative photographs for rebuttal.  (See Plaintiff Memo at p. 6.)

Defendants argue that the photographs of Plaintiff are relevant to his claim that he has suffered a permanent facial disfigurement, and that any potential prejudice arising from the fact that the photos appear to be mug shots can be remedied by redaction of any references to the Department of Corrections and Community Supervision ("DOCCS"), as well as Plaintiff's Departmental Identification Number ("DIN"), height and weight.  (See Memorandum of Law in Opposition to Plaintiff's Motions in Limine and Rule 37 Motion to Exclude Witnesses ("Def. Opp. Memo"), Docket Entry No. 142 at p. 14.)  Defendants further argue that the photographs they intend to take of the cell block at Sing Sing will provide the jury with an accurate perspective as to where all of the Inmate Witnesses, who allegedly witnessed the Defendants' use of force against Plaintiff, were located in relation to the incident; that the photographs will do nothing to indicate that prison is a dangerous place for corrections officers; and that plaintiff's attorneys are welcome to accompany defense counsel when they take the photographs, in order to obviate any concerns regarding authenticity.  (See Def. Opp. Memo at pp. 14-16.)  Thus, Defendants argue, their failure to timely disclose these photographs to Plaintiff pursuant to Rule 26 is essentially harmless.

Plaintiff's motion for exclusion of these photographs is granted.  Defendants have proffered no substantial justification for their failure to produce the photographs in a timely manner, nor is this failure harmless.  Exclusion is also warranted under Rule 403.  The photographs of Plaintiff are of extremely poor quality, and thus are unlikely to be probative of issues regarding the origin of Plaintiff's claimed facial deformity.  Moreover, the photographs are

clearly mug shots taken by law enforcement authorities at different times and thus could lead

jurors to draw adverse inferences concerning Plaintiff's character and criminal history.

Redaction of references to the DOCCS or Plaintiff's DIN, height and weight would not

effectively alleviate the unfairly prejudicial nature of these photographs, which have height

measurement markings in the background and show traditional mug shot poses and whose

probative value is minimal at best.

> The Court also finds that Defendants' proposed photographs of the cell block at

Sing Sing are properly excluded in light of Rule 403 considerations.  As an initial matter, these

photographs would be cumulative in light of the diagrams included by both parties on their

respective exhibit lists.  Moreover, the slight probative value that such photographs would have is

greatly outweighed by the prejudice that Plaintiff would suffer in that neither Plaintiff nor the

Inmate Witnesses would have the opportunity to verify the perspective of any potential

photographs, or to re-create their sight lines during the April 19, 2012, incident.

> Plaintiff's First Motion in limine is, accordingly, granted.

> *Plaintiff's Second Motion – Limitation of Testimony of Defendant's Expert, Dr. Erlanger*

> Plaintiff also moves in limine to exclude the testimony of Defendants' expert, Dr.

David Erlanger, "[t]o the extent that Defendants intend to offer expert testimony from Dr.

Erlanger beyond the scope of Dr. Erlanger's qualifications or the direct testimony of Mr. Tirado's

expert, Dr. Lawrence Shields."  (Plaintiff Memo at p. 9.)  Plaintiff asserts that Dr. Erlanger was

identified by Defendants solely as a rebuttal expert and argues on that basis that the description of

his proposed testimony set out in the Defendants' exhibit list (he is "[e]xpected to testify

regarding the injuries plaintiff allegedly suffered as a result of the 4/19/12 use of force") is

impermissibly broad.[11]  (See Docket Entry No. 125-2, Defendants' Witness List, Exhibit B to

Proposed Joint Pretrial Order.)  Plaintiff further argues that Dr. Erlanger's qualifications are

limited, and thus his potential testimony is constrained by Federal Rule of Evidence 702, which

requires that "experts stay within the reasonable confines of [their] subject area . . . as the

admission of an expert does not provide that individual with carte blanche to opine on every issue

in the case."  See Fate v. Village of Spring Valley, No. 11CV6838-JPO, 2013 WL 2649548, at *2

(S.D.N.Y. June 13, 2013).  Plaintiff also points to Dr. Erlanger's deposition testimony in arguing

that he may only opine on the neuropsychological sequelae of the April 19, 2012, incident, which

precludes him from offering opinions in response to several of Dr. Shields' non-

neuropsychological diagnoses.  (See Plaintiff Memo at pp. 10-11; see also Docket Entry Nos.

131-9, Ex. I (Deposition of David M. Erlanger), 131-10, Ex. J (Erlanger Neuropsychological

Evaluation) and 131-11, Ex. K (Erlanger Curriculum Vitae).)

     Defendants assert that discussion of this issue "is premature as the nature of Dr.

Erlanger's testimony will depend on the testimony of the plaintiff and his expert, Dr. Shields."

(Def. Opp. Memo at p. 21, note 19.)  While noting that Dr. Erlanger's examination of Plaintiff

was comprehensive and that he produced a report that was not cabined exclusively to rebuttal of

Dr. Shields' report, Defendants concede that "Dr. Erlanger is not a medical doctor or accident

reconstruction expert, therefore, he is unqualified to testify as to a number of the issues raised by

plaintiff in his moving papers."  (Def. Opp. Memo at p. 23.)

---

[11]  When Defendants submitted their request seeking an extension of discovery to
produce their expert disclosure to Plaintiff pursuant to Fed R. Civ. P. 26(a)(2),
they repeatedly characterized their expert as a "rebuttal expert" who would
produce a "rebuttal report."  (See Docket Entry No. 93.)  The discovery extension
request was granted on December 1, 2014, by Magistrate Judge Peck's memo
endorsement.  (See Docket Entry No. 94.)

Having considered carefully the relevant procedural history and the proffers as to Dr. Erlanger's limited area of expertise, the Court grants Plaintiff's Second Motion _in_ _limine_.  Dr. Erlanger will be permitted to testify only in rebuttal to expert testimony proffered on Plaintiff's principal case, and only as to matters within his area of expertise (neuropsychology).  Any further issues as to specific areas of testimony, including issues concerning the permissible temporal context of his opinions, will be taken up in the context of the trial.

> *Plaintiff's Third Motion – Exclusion of Evidence of Inmate Witnesses' Criminal Convictions*

For substantially the reasons explained above in connection with Defendants' Third Motion _in limine_, Plaintiff's Third Motion _in_ _limine_ is denied.

> *Plaintiff's Fourth Motion – Exclusion of Evidence of Inmate Witnesses' Disciplinary Histories*

For substantially the reasons explained above in connection with Defendants' Fourth Motion _in_ _limine_, Plaintiff's Fourth Motion _in_ _limine_ is granted.

> *Plaintiff's Motion For Rule 37 Preclusive Sanctions*

Plaintiff seeks, pursuant to Fed. R. Civ. P. 37, exclusion of 17 defense witnesses who, although they may have been mentioned or discussed in documents, deposition testimony or pleadings, were never identified by Defendants as potential witnesses in disclosures pursuant to Rule 26(a)(1).  The individuals were identified for the first time as potential witnesses well after discovery, in disclosures made in anticipation of the final pretrial conference.  Plaintiff claims prejudice as a result of this failure to make disclosures, asserting that Plaintiff's discovery decisions were made on the assumption that Defendants' trial case would be proffered only through individuals who had been identified as potential witnesses in the Rule 26(a)(1)(A)(i) disclosures, and further asserts that much of the testimony of the additional witnesses could be

cumulative.  Plaintiff seeks preclusion of the witnesses and an award of the expenses of the Rule 37 motion practice or, to the extent the Court permits the witnesses to be called, an opportunity to depose them in advance of trial at Defendants' expense.  Defendants proffer that the disclosure framework in this case was unusual because it was commenced <u>pro se</u> and that Plaintiff is not prejudiced because each individual was in same way known to Plaintiff.

Plaintiff's Rule 37 motion is granted in part.  While Defendants have not demonstrated that their failure to comply with the obligation to disclose potential witnesses as such was substantially justified and the failure was not harmless, the Court concludes that preclusion of all of the witnesses is too severe a sanction and that, in light of the Plaintiff's failure to engage in informal communications prior to initiation of Rule 37 motion practice in accordance with the undersigned's individual practices rules and the Local Rules of this Court, an award of the costs of the motion practice is not warranted.  However, the Defendants must produce promptly for deposition any of the belatedly disclosed witnesses that Plaintiff requests to depose in advance of trial and cover all expenses, including witness and attorney travel (but not attorney time charges[12]), incurred in connection with such depositions.

---

[12]   This exclusion is without prejudice to any later application for an attorneys' fee award in the event that Plaintiff prevails on the merits of his claims.

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion in Limine (Docket Entry No. 127) is granted in part, and Plaintiff's Motion in Limine (Docket Entry No. 129) is granted in part. Plaintiff's motion for sanctions pursuant to Rule 37 (Docket Entry No. 132) is granted in part, as set forth above.  More specifically,

Defendants' First Motion[13] <u>in</u> <u>limine</u> is granted in part, and the Court will upon request give a limiting instruction, as set forth above.

Defendants' Second Motion <u>in</u> <u>limine</u> is denied.

Defendants' Third Motion <u>in</u> <u>limine</u> is granted in part, as set forth above.

Defendants' Fourth Motion <u>in</u> <u>limine</u> is denied.

Defendant's Fifth Motion <u>in</u> <u>limine</u> is denied.

Defendants' Sixth Motion <u>in</u> <u>limine</u> is granted in part, as set forth above.

Plaintiff's First Motion <u>in</u> <u>limine</u> is granted.

Plaintiff's Second Motion <u>in</u> <u>limine</u> is granted.

Plaintiff's Third Motion <u>in</u> <u>limine</u> is denied.

Plaintiff's Fourth Motion <u>in</u> <u>limine</u> is granted.

The final pretrial conference, which is currently scheduled for November 12, 2015, is adjourned to **December 14, 2015 at 3:00 p.m.**  The parties must meet and confer immediately to update their Joint Pretrial Statement and related submissions in light of the Court's decisions on the summary judgment motion and these motions <u>in</u> <u>limine</u>; the parties should also revisit the question of settlement and notify the undersigned if a renewed settlement reference to Magistrate Judge Peck would be helpful in that regard.  Defendants must identify which of the 17 late-

---

[13]    The Court's nomenclature is explained in footnote 3, <u>supra</u>.

disclosed witnesses they intend to call at trial and Plaintiffs must identify which, if any, of those witnesses they wish to depose in advance of trial, and the parties must propose a schedule for such depositions in their updated Joint Pretrial Statement.

The parties must file their updated Joint Pretrial Statement and submissions by **December 4, 2015,** with courtesy copies provided for Chambers.

SO ORDERED.

Dated: New York, New York
        November 9, 2015

   /s/  Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge